IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

JAMES MERRICK,                    §
                                  §
            Plaintiff,            §
                                  § Civil Action No. 3:10-CV-2172-D
VS.                               §
                                  §
MICHAEL J. SCOTT, P.C.,           §
                                  §
            Defendant.            §

MEMORANDUM OPINION
AND ORDER

Plaintiff James Merrick ("Merrick") moves for an award of attorney's fees following his settlement with defendant Michael J. Scott, P.C. ("Scott") of an action seeking relief under the Fair Debt Collection Practices Act ("FDCPA"). For reasons that follow, the court awards Merrick the sum of $3,845.40 in attorney's fees and awards taxable costs of court.[1]

I

In October 2010 Merrick sued Scott, a collection law firm, under the FDCPA for allegedly communicating with him in an attempt to collect a debt after he had sent Scott a cease-and-desist letter and a notice of representation letter. Merrick is represented by Michael S. Agruss, Esquire ("Agruss"), of the law firm Krohn & Moss, Ltd. ("Krohn & Moss"). Agruss also represented Merrick and other plaintiffs in numerous other FDCPA lawsuits filed against Scott. *See, e.g.*, *Allen v. Michael J. Scott, P.C.*, No. 3:10-CV-

_____

[1]Merrick requests $405.00 in taxable court costs. This amount is undisputed.

2005-F (N.D. Tex. Oct. 5, 2010) (Furgeson, J.); *Merrick v. Michael J. Scott, P.C.*, No. 3:10-CV-2536-M (N.D. Tex. Dec. 28, 2010) (Lynn, J.); *Latham v. Michael J. Scott, P.C.*, No. 1:10-CV-0299-C (N.D. Tex. Dec. 30, 2010) (Cummings, J.); *Glasgow v. Michael J. Scott, P.C.*, No. 6:11-CV-0008-LED (E.D. Tex. Jan. 4, 2011); *Barrington v. Michael J. Scott, P.C.*, No. 3:11-CV-0083-N (N.D. Tex. Jan. 13, 2011) (Godbey, J.).

These cases involved common fact patterns: each plaintiff allegedly owed a consumer debt, each plaintiff allegedly sent Scott a cease-and-desist letter and notice of representation, and Scott allegedly communicated with each plaintiff to collect a debt after the plaintiff's letter was sent. Each plaintiff sued under 15 U.S.C. § 1692c(a)(2) and (c) and requested the maximum in statutory damages but no actual damages. Soon after the cases were filed, Scott reached settlements with the plaintiffs in *Latham*, *Glasgow*, *Barrington*, and the two cases involving Merrick. Scott agreed to pay the maximum in statutory damages (i.e., all the relief that the plaintiffs requested), but the parties left the issue of attorney's fees for the court to decide. A notice of settlement was filed on February 25, 2011, and a motion for attorney's fees was filed in each case on March 17, 2011 (with the exception of *Latham*, in which the motion was filed on March 16, 2011). The fee application in the present case is now ripe for resolution.

Under the FDCPA, a plaintiff in a "successful action to enforce [FDCPA] liability" can recover "the costs of the action, together with a reasonable attorney's fee as determined by the court." 15 U.S.C. § 1692k(a)(3). "[A] plaintiff [must] prove actual or additional damages in order to receive attorney's fees and costs." *Johnson v. Eaton*, 80 F.3d 148, 152 (5th Cir. 1996).

When a party's victory is purely technical or *de minimis*, a court may lawfully award low fees or no fees without making a lodestar calculation or going through a 12-factor analysis. *Farrar v. Hobby*, 506 U.S. 103, 115 (1992). *See, e.g.*, *McNeill v. Graham, Bright & Smith, P.C.*, 2006 WL 1489502, at *3 (N.D. Tex. May 26, 2006) (Kinkeade, J.) (citing *Carroll v. Wolpoff & Abramson*, 53 F.3d 626, 628 (4th Cir. 1995)) (exercising discretion to award small flat fee, where recovery was only for nominal damages). If a party's victory is not *de minimis* or technical, courts in this circuit apply a two-step analysis based on the "lodestar method" when determining reasonable attorney's fees under the FDCPA. *Longden v. Sunderman*, 979 F.2d 1095, 1099 (5th Cir. 1992). First, the court multiplies the "number of hours reasonably expended" by the "prevailing hourly rate in the community for similar work" to arrive at the lodestar. *Id*. When the fee applicant has carried his burden of showing that the claimed rate and number of hours are reasonable, the resulting product is presumed to be the reasonable

fee. *Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546, 564 (1986). Second, after determining the lodestar amount, the court decides whether to adjust the lodestar amount upward or downward after assessing the twelve *Johnson*[2] factors.[3] *Longden*, 979 F.2d at 1099-1100.

### III

The parties stipulated in the settlement agreement that "for purposes of recovering attorneys' fees and costs, [Merrick] is the

---

[2]*Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974).

[3]The *Johnson* factors are: (1) time and labor required, (2) novelty and difficulty of the issues, (3) skill required to perform the legal services properly, (4) preclusion of other employment, (5) customary fee, (6) whether the fee is fixed of contingent, (7) time limitations imposed by the client or the circumstances, (8) amount involved and results obtained, (9) experience, reputation and ability of the attorneys, (10) undesirability of the case, (11) nature and length of the professional relationship with the client, and (12) awards in similar cases.
The Supreme Court has "barred any use" of the sixth *Johnson* factor. *See Rutherford v. Harris Cnty.*, 197 F.3d 173, 193 (5th Cir. 1999) (citing *Walker v. U.S. Dep't of Hous. & Urban Dev.*, 99 F.3d 761, 772 (5th Cir. 1996)). The Supreme Court has also stated that some of the factors—i.e., the novelty and complexity of the issues, the special skill and experience of counsel, the quality of the representation, and the results obtained—are "presumably fully reflected in the lodestar amount," and cannot serve as independent bases for adjusting the lodestar. *See Del. Valley Citizens' Council*, 478 U.S. at 564-65; *Pennsylvania v. Del. Valley Citizens' Council*, 483 U.S. 711, 726-27 (1987) (supplementing prior opinion by noting that using *Johnson* factors to make lodestar adjustments, when same factors are taken into account when determining reasonable number of hours and hourly rate, would result in windfall for party).

prevailing party and entitled to attorneys' fees and costs."[4]  P. App. Ex. A at 2.[5]  *Cf. Farrar*, 506 U.S. at 111 (explaining, in 42 U.S.C. § 1988 fee-shifting context, plaintiff may qualify as "prevailing party" by obtaining enforceable judgment against defendant from whom fees are sought or comparable relief through consent decree or settlement).  Because the parties do not appear to dispute that Merrick has brought a "successful action to enforce [FDCPA] liability" by obtaining $1,000 in damages through settlement, the court next determines what is a reasonable fee award.

IV

Scott concedes that Merrick is entitled to attorney's fees as a "prevailing party," but it contends that the degree of success achieved remains a relevant factor in determining the reasonableness of the award.  *See Farrar*, 506 U.S. at 114 (citing

---

[4]The term "prevailing party" does not appear in the fee-shifting statute of the FDCPA; rather, it is a term taken from 42 U.S.C. § 1988.  Nevertheless, the court accepts the term "prevailing party" as sufficiently analogous to the FDCPA's "successful action to enforce the foregoing liability," 15 U.S.C. § 1692k(a)(3), to interpret the settlement agreement to provide that Merrick is entitled to an award of attorney's fees, especially considering that § 1988 precedent is relevant to an FDCPA attorney's fee dispute.  *See, e.g.*, *Johnson*, 80 F.3d at 152.

[5]The court is citing Merrick's appendix in this manner because he did not properly paginate his appendix.  Because this defect has not interfered with the decisional process of the court, and to avoid undue delay resulting from a requirement that Merrick file another appendix (and another brief that properly cites the appendix), the court will consider the appendix as filed.

*Hensley v. Eckerhart*, 461 U.S. 424 (1983)).  Scott urges the court
to reduce Merrick's fee award on this basis.

A

When a party's victory is *de minimis* or technical, the court
can award low fees or no fees without making a lodestar calculation
or addressing the *Johnson* factors bearing on reasonableness.  *See*
*id*. at 115.  Therefore, before reaching the lodestar analysis, the
court will determine whether Merrick's success is merely *de minimis*
or technical.

Scott urges the court to adopt the reasoning of Justice
O'Connor's concurrence in *Farrar* to reduce the fee award, taking
into account (1) the difference between the judgment recovered and
the judgment sought and (2) the lack of public purpose served.  *See*
*id*. at 121-22.[6]

B

In support of the first factor, Scott relies on this analogy:
because the Fifth Circuit in *Eaton* awarded no fees when a FDCPA
plaintiff recovered no actual or additional damages, Merrick should
only be awarded part of his requested fees but he only recovered
additional damages.  The court disagrees.

In *Eaton* the panel declined to award fees against one of two
defendants because the requirements of the fee-shifting statute had

---

[6]Justice O'Connor's concurrence also took into consideration
the significance of the legal issue on which the plaintiff
prevailed.  Scott did not present an argument on this ground.

not been met.  The panel noted that 15 U.S.C. § 1692k(a)(3) permits recovery of a reasonable attorney's fee "in the case of any successful action to enforce the foregoing liability."  But it also concluded that, although the plaintiff "demonstrated that [the defendant] had violated the FDCPA," the plaintiff "failed to enforce any liability for actual or additional damages against [the defendant]."  *Eaton*, 80 F.3d at 151.  But the *Eaton* panel upheld a fee award against a second defendant from whom the plaintiff only recovered additional damages, noting that such damages were punitive and designed to punish for wrongful acts.  *See id.* at 152 (holding that second defendant, who obtained $500 in additional damages, was entitled to attorney's fees and that case was distinguishable from *Farrar*, where defendant only obtained $1 in nominal damages).  Therefore, *Eaton* interprets the FDCPA to "require[] that a plaintiff prove actual *or* additional damages in order to receive attorney's fees and costs."  *Id*. at 152 (emphasis added).  Unlike the *Eaton* plaintiff, who failed this requirement as to the first defendant, Merrick satisfied this prerequisite by recovering $1,000 in additional damages.  Merrick's recovery against Scott is thus more analogous to the circumstances of the *second Eaton* defendant rather than the *first Eaton* defendant.

The court next rejects Scott's reading of *Eaton* to require that an attorney's fee award be proportionate to the amount recovered relative to the maximum amount recoverable under the

statute.  There is no such requirement in the FDCPA's fee-shifting

provision.  And Justice O'Connor's concurrence in *Farrar* only says

that "a substantial difference between the judgment recovered and

*the recovery sought* suggests that the victory is in fact purely

technical."  *Farrar*, 506 U.S. at 121 (emphasis added).[7]  As the

O'Connor concurrence in *Farrar* cautioned, no matter how much sense

a particular fee reduction approach makes, it would be improper to

adopt it if Congress had declared a contrary intent.  *See id*. at

118.  Congress has mandated in the FDCPA fee-shifting statute a fee

award for "any successful action to enforce [FDCPA] liability."  15

U.S.C. § 1692k(a)(3).[8]  Although some courts have acknowledged that

the district court has some discretion to determine an appropriate

fee amount to award, *see, e.g.*, *Carroll*, 53 F.3d at 629, there is

no statutory basis for penalizing a plaintiff for seeking only one

type of damages as opposed to the full panoply of damages permitted

by law.

C

In support of the second factor, Scott contends that Merrick's

lawsuit served no public purpose in that it accomplished no goal

_____

[7]In fact, Merrick obtained everything he sought in his
complaint: $1,000 in statutory damages but no actual damages.  By
comparison, the plaintiff in *Carroll* only recovered 5% of the
statutory damages she sought, and she abandoned the actual damages
that she initially sought.  *See Carroll*, 53 F.3d at 629.

[8]This is in contrast to 42 U.S.C. § 1988, which, as noted in
*Farrar*, 506 U.S. at 119, expressly grants district courts the
discretion to withhold attorney's fees.

other than occupying the time and energy of counsel, the court, and the client. *Cf. Farrar*, 506 U.S. at 121-22 (considering possibility that even a lawsuit with low recovery amounts could be considered nontrivial if it accomplished some public goal). Scott maintains that this suit could serve no public purpose because Scott's actions were not actually illegal and the lawsuit would have had no impact in deterring future conduct.

Because this lawsuit was settled before the court addressed the merits, considerations of public benefit are less relevant. The merits of the parties' FDCPA arguments are no longer in controversy, and the court declines to speculate regarding the public benefit the lawsuit might have had were the case not settled when it was.[9]

The court concludes that the settlement is not a *de minimis* or technical victory that requires the denial or reduction of an award of attorney's fees.

V

The court now turns to calculating the lodestar. Merrick seeks $7,125.50 in attorney's fees and costs based on 22.7 hours of attorney time at an hourly rate of $290.00 per hour and 1.1 hours

_____

[9]The court rejects Merrick's argument that, by agreeing to settle for the maximum statutory damages, Scott has acknowledged the egregiousness of its conduct and must for that reason pay Merrick attorney's fees. This case was not been decided on the merits, and the court declines to speculate about culpability when the settlement agreement itself provides that the settlement is not be construed as evidence of an admission of liability or merit.

of paralegal time at a rate of $125.00 per hour.  Scott requests

the court to reduce the number of hours to account for block

billing, lack of billing judgment, clerical work, and excessive

time.  It also urges the court to award an hourly rate of $175.00

for attorney time and $80.00 for paralegal time.

A

Merrick's practice of block billing impedes the court's

ability to assess whether Agruss spent a reasonable amount of time

on each task.[10]  The party seeking fees bears the burden of proving

that the hours claimed were reasonably expended on the litigation,

and he can meet that burden only by presenting evidence that is

adequate for the court to determine what hours should be included

in the reimbursement.  *See Bode v. United States*, 919 F.2d 1044,

1047 (5th Cir. 1990); *see also La. Power & Light Co. v. Kellstrom*,

50 F.3d 319, 324 (5th Cir. 1995) (quoting *Hensley*, 461 U.S. at 437)

(stating that party should "'maintain billing time records in a

manner that will enable a reviewing court to identify distinct

claims'").  Agruss may have "meticulously entered each billing

entry, separated by each task performed," P. Reply 7, but he failed

to record the amount of time spent per task.

---

[10]"The term 'block billing' refers to the time-keeping method
by which each lawyer and legal assistant enters the total daily
time spent working on a case, rather than itemizing the time
expended on specific tasks." *Fralick v. Plumbers & Pipefitters
Nat'l Pension Fund*, 2011 WL 487754, at *4 (N.D. Tex. Feb. 11, 2011)
(Fitzwater C.J.) (some internal quotation marks omitted)
(collecting cases).

Merrick responds that Scott cannot direct the court to a single billing entry where Merrick's attorney allegedly engaged in block billing. But even a cursory review of Merrick's fee application shows that *nearly every entry* in Agruss' billing statement is block billed.[11] For example, Agruss' block billing prevents the court from determining, in one November 8, 2010 entry, what part of the 0.90 hours was spent on legal work, such as "review[ing] Defendant's Answer" or "prepar[ing] a memo regarding denials," and what part was spent on purely administrative tasks, such as "add[ing] lead trial counsel" and "set[ting] up links" on Agruss' case management software.[12] P. App. Ex. B at 4. Nor can the court determine whether an excessive amount of time was spent on "receiv[ing] and review[ing] Defendant's Answer" because the court cannot discern from the block-billed entry how much of the 0.90 hours was spent on that particular task. Given the pervasive

---

[11]By the court's count, only four entries in Agruss' billing statement are *not* block billed: 3/9/11, 1/7/11, 12/8/10, and one 11/16/10 entry.

[12]The full entry is:

> Received and reviewed Defendant's Answer; matched against complaint and prepared a memo regarding denials; reviewed affirmative defenses, researched and prepare memo regarding applicability; added lead trial counsel in Amicus; set up links in Amicus; prepared a memo to the file; Agruss, Mike / Attorney.

P. App. Ex. B at 4.

use block billing, the court cannot properly evaluate whether Agruss spent a reasonable amount of time on each listed task. The court applies a 20% reduction to the total number of hours to reflect the obstacles that the block billing has placed on the court's evaluation of reasonableness. *See, e.g., Barrow v. Greenville Indep. Sch. Dist.*, 2005 U.S. Dist. LEXIS 34557, at *17 (N.D. Tex. Dec. 20, 2005) (Fitzwater, J.) (noting that most courts that have addressed the problem of block billing apply a percentage reduction of hours rather than denying all block-billed fees), *aff'd*, 2007 WL 3085028 (5th Cir. Oct. 23, 2007).

B

Merrick has adduced no evidence that Agruss exercised billing judgment.[13] Agruss does not explain whether he deducted any hours from the total. In fact, it appears that the opposite is true: he avers in his declaration that "[t]he time entries bearing my name represent the actual attorney hours I spent working on Plaintiff's case," and "[e]ach of these time entries truly and accurately

---

[13]The fee applicant has the burden of proving that it exercised billing judgment. *See Walker*, 99 F.3d at 770. "Billing judgment requires documentation of the hours charged and of the hours written off as unproductive, excessive, or redundant." *Fralick*, 2011 WL 487754, at *3 (quoting *Saizan v. Delta Concrete Prods. Co.*, 448 F.3d 795, 799 (5th Cir. 2006)); *see Walker*, 99 F.3d at 769 n.9 (recommending that fee applications document "not only hours claimed, but also hours written off" (quoting *Alberti v. Klevenhagen*, 896 F.2d 927, 930 (5th Cir. 1990)); *Leroy v. City of Houston*, 831 F.2d 576, 585 & n.15 (5th Cir. 1987) (concluding that district court erred in accepting faulty records with no reduction of hours and disapproving of billing records that were "completely devoid of any hours written off").

reflect the services I performed representing Plaintiff in this case." P. App. Ex. C at 3. These statements suggest that the 22.7 hours of attorney time reported are the total number of hours, with no reduction for unproductive, excessive, or redundant work. Although Agruss avers that the "time incurred on each entry was reasonably and necessarily incurred," *id.*, it is unlikely that all 22.7 hours were reasonably expended. This is so especially considering that Agruss has claimed fees for such minute tasks as updating internal case management records and leaving a message to call back, *see, e.g.*, P. App. Ex. B at 2, 4, and repetitive tasks such as "prepar[ing] a memo to the file," sometimes even multiple times in one day, *see, e.g.*, P. App. Ex. B at 3 (noting four separate times, on November 30, 2010, that Agruss "prepared a memo to the file," after each conversation with local counsel or defense counsel). Given the total absence of evidence of billing judgment, the court concludes that Merrick has failed to carry his burden in this respect. The court applies a 10% reduction to the total number of hours to compensate for the lack of billing judgment.

C

The court considers next whether to reduce the time claimed for "purely clerical" tasks.

Merrick maintains that, under *Missouri v. Jenkins,* 491 U.S.

274 (1989), the court must compensate paralegal time.[14] Merrick's

reliance on *Jenkins* is misplaced.  Although *Jenkins* acknowledges

that a fee must "take into account" all the costs that go into

producing an attorney's work product, *id.* at 285, *Jenkins*

emphasizes that the marketplace determines *how* such costs are taken

into account—this includes whether non-attorney work is to be

billed separately or included as a part of the overhead, and the

rate at which the work ought to be compensated if billed

separately.  *Id.* at 288.  Therefore, the passage Merrick quotes

from *Jenkins*, *see supra* note 14, cannot reasonably be understood to

mean that the costs of all members of a law firm's support staff

(including, say, non-legal accounting personnel) can always be

shifted as part of a fee award.  Rather, the court must determine

whether the prevailing market practice is to subsume those costs

into a firm's overhead or to bill separately for such support

services.  For example, several courts (including this court) have

---

[14]Merrick quotes the following from *Jenkins*:

> Clearly, a "reasonable attorney's fee" cannot
> have been meant to compensate only work
> performed personally by members of the bar.
> Rather, the term must refer to a reasonable
> fee for the work product of an attorney.
> Thus, the fee must take into account the work
> not only of attorneys, but also of
> secretaries, messengers, librarians, janitors,
> and others whose labor contributes to the work
> product for which an attorney bills her
> client.

P. Reply 6-7 (emphasis omitted) (quoting *Jenkins*, 491 U.S. at 285).

recognized that office overhead and secretarial expenses are already taken into account in the attorney's fee, while fees for legal work, even if done by a paralegal, may be recovered separately. *See, e.g., In re Mullins*, 84 F.3d 459, 469 (D.C. Cir. 1996); *Int'l Woodworkers of Am. v. Champion Int'l Corp.*, 790 F.2d 1174, 1183 (5th Cir. 1986), *superseded on other grounds* by Civil Rights Act of 1991, Pub. L. No. 102-066, 105 Stat. 1071, *as recognized in Shipes v. Trinity Indus.*, 31 F.3d 347, 349 (5th Cir. 1994); *Ferguson v. FDIC*, 1997 WL 279885, at *3 (N.D. Tex. May 13, 1997) (Fitzwater, J.); *cf. Jane L. v. Bangerter*, 61 F.3d 1505, 1517 (10th Cir. 1995) (permitting out-of-pocket expenses to be awarded as attorney's fees if the expenses are reasonable and are not absorbed as part of law firm overhead but are normally billed to a private client). In fact, the Court in *Jenkins* explicitly qualified its reasoning when it noted: "Of course, purely clerical or secretarial tasks should not be billed at a paralegal rate, regardless of who performs them." *Jenkins*, 491 U.S. at 288 n.10.

Moreover, Scott's challenge in this respect is not directed to the identity of the person doing the work (i.e., a paralegal) but to the nature of the work being billed (i.e., clerical work, whether done by an attorney or member of the support staff). Non-legal work, even when done by an attorney, should be charged a lesser rate or not charged at all, depending on whether the work would be considered a part of overhead. *See Johnson*, 488 F.2d at

717 (observing that there is no enhancement in dollar value when attorney performs clerical task); *see Abrams v. Baylor Coll. of Med.*, 805 F.2d 528, 536 (5th Cir. 1986) (distinguishing "legal work, in the strict sense," from clerical work that "a lawyer may do because he has no other help available" (citing *Johnson*, 488 F.2d at 717)); *Allen v. U.S. Steel Corp.*, 665 F.2d 689, 697 (5th Cir. 1982) (permitting recovery of paralegal expenses only to the extent that work traditionally done by an attorney is performed, and prohibiting recovery for work that would be covered as overhead expenses). Merrick has not presented any evidence to suggest that the market practices have changed significantly enough to vary from this Fifth Circuit precedent.

Scott identifies the following tasks as clerical: calendaring deadlines, filing documents in internal files and in court, reviewing ECF notice confirming a filing, and emailing documents to local counsel. The court agrees that entries such as "Received and reviewed the ECF notice that Defendant served its initial disclosures," P. App. Ex. B at 2 (entry dated 1/7/11), and "Received and reviewed the ECF notice confirming the parties filed the proposed scheduling order; updated Amicus accordingly," *id.* (entry dated 12/1/10), are purely clerical. Many other entries, however, contain a mix of clerical and legal tasks such that disallowing all time claimed for an entry would be unwarranted. *See, e.g., id.* at 4 (entry dated 11/8/10 that includes legal tasks

such as "reviewed Defendant's Answer; matched against complaint and prepared a memo regarding denials" and clerical tasks such as "added lead trial counsel in Amicus; set up links in Amicus"). As a result, the court must approximate the proper reduction amount. After reviewing Agruss' billing statement, the court concludes that a 5% reduction is adequate to account for the non-billable clerical time included in the statement.

The court also concludes that it must exclude the entirety of the paralegal's reported hours from the lodestar calculation. All three of the paralegal entries consist entirely of nonlegal work, such as preparing complaint documents for filing, preparing summons, preparing a civil case cover sheet, filing, hiring a process server, and discussing matters of proof of service with the attorney. *See* P. App. Ex. B. at 5 (entries dated 10/28/10, 10/29/10, and 11/10/10 for paralegal Imma Almourzaeva). The court excludes all 1.1 hours of the paralegal's reported time.

D

Scott contends that time spent on certain specific tasks should be reduced as excessive.

1

First, Scott challenges Agruss' practice of reusing what appear to be form documents, yet billing for the time it would have taken to write the legal documents from scratch. For example, Scott points out that the 19-paragraph complaint filed in this case

is virtually identical to the ones filed in several subsequent cases involving Agruss as the attorney and Scott as the defendant. The only variables are the name and residence of the plaintiff, the creditor and account number information particular to the plaintiff, and the dates on which the cease and desist letter, the notice of representation letter, and any subsequent communications from the defendant were sent. *See, e.g.*, D. App. 58-60. Scott also mentioned another case involving Agruss and Scott in this district: *Allen v. Michael J. Scott, P.C.* (Ferguson, J.). In *Allen* the complaint was filed on October 5, 2010 (predating the complaint in this case, which was filed on October 28, 2010), and the court can take judicial notice that it is virtually identical to the one in this case.

The evidence confirms that Agruss simply used a form to draw the complaint in this case. Agruss acknowledges using form pleadings, but he defends this practice on the ground that it saves time. He maintains that, had he not used form pleadings, his attorney's fees would have been even higher. The fallacy in Merrick's argument is not in the premise that use of form pleadings can save time and result in lower fees, but that Agruss did not charge lower fees as a result of using form pleadings.[15] Here, he

---

[15]In support of his position, Merrick misapplies a quotation from *American Security Mortgage v. Mercedes Benz of North America, Inc.*, 1998 WL 70609, at *4 (N.D. Ill. Feb. 11, 1998). Merrick maintains that the hours billed are not excessive when viewed "in light of the streamlined litigation process" that form pleadings

recorded 1.5 hours for preparing the complaint.  P. App. B at 4
(entry dated 10/26/10).  The reasonable time for this task is
measured, however, according to the amount of time it would have
taken Agruss to exercise his professional judgment to determine
whether a particular form complaint could be used, decide whether
adjustments to averments were necessary considering the specific
case to be filed, and dictate to a secretary (or insert himself or
via a paralegal) plaintiff-specific information for inclusion in
the form complaint.  The court finds that 0.5 hours is adequate to
account for such legal work in this case.

Scott also suspects that much of the attorney work that
appears on the billing statement was actually done (or, at the
least, could have been done) by a paralegal.  It argues that, if
the only work done to the form complaint was to fill in the
plaintiff's name, place of residence, dates, and debt information,
the work is secretarial in nature and should not be billed at
attorney rates.  The court disagrees that the entirety of such work
is secretarial.

A lawyer who relies on a form pleading must still exercise
legal judgment to ensure that the form is appropriately used under

---

facilitate.  But the court in *American Security Mortgage* had been
considering the separate question whether to reduce the overall
award for excessiveness *after* making a lodestar calculation, not
whether the hours that counted toward the lodestar calculation were
themselves excessive. *American Security Mortgage* cannot reasonably
be read to permit an attorney to bill for more hours than he
actually worked or could have reasonably worked.

the facts pertinent to a particular lawsuit, to decide whether refinements in wording are required (even if no adjustments are made), or, in some instances, to verify that changes in the law since the last time the form complaint was used do not require changes in the form. Because such work is legal in nature, the correct approach is not to disallow it but instead to ensure that the time allowed in reasonable under the circumstances. And if a paralegal performs work traditionally done by an attorney, fees for preparing the complaint are compensable if reasonable and properly documented (e.g., not block billed, and adequately described).

2

Second, Scott argues that Agruss spent an excessive number of hours reviewing Scott's answer and affirmative defenses. It maintains it is doubtful that Agruss would have needed to "research[] and prepare memo regarding applicability [of affirmative defenses]," P. App. Ex. B. at 4 (entry dated 11/8/10), given that the answer consisted of a general denial and standard affirmative defenses that should have been familiar to an attorney who regularly handles FDCPA litigation. D. Resp. 31-32; *see* D. App. 79 (listing affirmative defenses of third-party action, pre-existing condition, failure to mitigate damages, and bona fide error). The court agrees that the 0.9 hours Agruss billed is excessive and unnecessary given the nature of the tasks recorded and the legal dispute. The court reduces the number of hours for

this task to 0.5 hours.

Third, Scott argues that Agruss should not have expended 0.2 hours reviewing the ECF notice confirming the filing of the notice of settlement, P. App. Ex. B. at 1 (first entry dated 2/25/11), and that it should not have taken Agruss 0.3 hours to draft a one-paragraph notice of settlement, *id.* (second entry dated 2/23/11), that is identical in all respects (except the plaintiff's name) to the notices of settlement in four other cases involving Agruss and Scott, all submitted on the same day. The court finds that a reasonable amount of time is no more than 0.1 hour to review an auto-generated ECF confirmation of filing, especially given that Agruss billed 0.1 hour for the other entries that only consist of "receiv[ing] and review[ing an] ECF notice and updating the case management system." *See, e.g.*, P. App. Ex. B at 2 (indicating 0.1 hour for the 1/7/11 and 12/1/10 entries). The court accepts, however, that 0.3 hours (18 minutes) were reasonably expended preparing the notice of settlement. Because all of the notices were submitted on the same day, the court cannot say that the notice in this case was necessarily copied from a notice in another case.

E

Scott maintains that the time Agruss has spent litigating the attorney's fee motion should be disallowed or the rate reduced

because Agruss' time has only benefited Agruss rather than his client. In support, Scott cites a hearing transcript in a case in the Eastern District of California and cites a case in the Eastern District of Texas. Neither case stands for the proposition that time spent on attorney's fees litigation should be disallowed from the lodestar calculation. And assuming *arguendo* that the decisions are on point, they are not binding on this court.

The compensability of time spent litigating attorney's fee claims is well-established in this circuit. *See, e.g.*, *Johnson v. Miss.*, 606 F.2d 635, 638 (5th Cir. 1979) (concluding that attorney's fees may be awarded for time spent litigating fee claim, and surveying opinions from many other circuits who are in agreement); *Cruz v. Hauck*, 762 F.2d 1230, 1233 (5th Cir. 1985) (noting, in a § 1988 context, that "[i]t is settled" that prevailing parties are entitled to attorney's fees for efforts litigating a fee claim).

Although Agruss can recover such fees, the time spent on attorney's fee litigation must be reasonable and necessary. Agruss reported 0.6 hours expended redacting from the billing record material protected by the attorney-client privilege and the work product doctrine, 1.8 hours preparing the motion for attorney's fees, researching Fifth Circuit case law, drafting the motions, and preparing the exhibits and declarations, and 2.30 anticipated hours for reviewing Scott's response, reviewing the cited case law, and

drafting a reply.  Of these, Scott challenges as excessive the 1.8 hours expended preparing the motion.  It posits that the motion is virtually identical to motions Agruss filed in four other cases (including one submitted one day before the motion he filed in this case).

The court finds that 1.0 hour, reflecting a reduction of 0.8 hours, was reasonably expended evaluating whether the same legal arguments that applied to the other plaintiffs applies to Merrick's motion and making plaintiff-specific adjustments to the motion.

Scott also challenges as excessive the 2.3 anticipated hours spent in drafting the reply, arguing that this entry takes up a disproportionate amount of time when compared to time spent on litigating the underlying lawsuit.  Scott argues that Agruss could have saved time on the reply if he had submitted a motion for attorney's fees of higher quality.

This argument is less persuasive.  The court finds that Agruss reasonably claimed more time to prepare the reply because, unlike the form pleadings and the formulaic motion for attorney's fees, this pleading required customized preparation to address specific arguments that Scott raised in response to the fee motion.  The court rejects Scott's contention that Agruss should be penalized for failing to anticipate in the initial motion the arguments that Scott raised in its response.  The court therefore allows all 2.3 hours.

The court next decides whether $290.00 per hour is a reasonable rate to charge for Agruss' services as a sixth-year associate.

   Scott maintains that the court should approve an hourly rate of $175.00. It criticizes as outdated the 2007 statistics on which Agruss relies to support a $290.00 hourly rate, cites several cases from other districts in the country that have awarded lower fees to Krohn & Moss, and argues that Kim Lucas, Esquire ("Lucas"), the Dallas-based attorney who signed a declaration in support of Agruss' fee request, is an interested party because she served as Agruss' local counsel.

The court finds that $290.00 is a reasonable hourly rate for Agruss' services. Although Scott criticizes the statistics that support this hourly rate, none of the statistical evidence suggests that $175.00 per hour is more appropriate. *See, e.g.*, D. App. 185, 188 (indicating in 2009 State Bar of Texas survey that median rate for consumer law attorney in Dallas-Fort Worth region was $238.00 and that median rate for attorneys in the region, generally, with three to six years of experience was $214.00). Although the fact that Lucas is an interested party affects the weight given to her testimony, it does not render her testimony inadmissible. And Agruss has submitted evidence of cases in various districts that have awarded hourly rates comparable to the one requested here for

similar FDCPA work.  Moreover, "[t]he court . . . is itself an expert on the question [of reasonable fees] and may consider its own knowledge and experience concerning reasonable and proper fees and may form an independent judgment either with or without the aid of testimony of witnesses as to value." *Campbell v. Green*, 112 F.2d 143, 144 (5th Cir. 1940).  The court finds that Agruss has submitted sufficient evidence to support a finding that $290.00 per hour is a reasonable rate for a sixth-year associate practicing consumer law in this community. *See, e.g.*, P. App. Ex. D at 19 (reporting in 2007 survey average attorney hourly rate of $275.00 for Texas attorneys who had practiced consumer law for six to ten years); P. App. Ex. L at 1-2 (indicating, in recent declaration of Dallas-based attorney with FDCPA practice, that hourly rates were consistent with prevailing rates for FDCPA lawyers in community).

G

Based on the above, the court disallows the entirety of the paralegal hours billed.  It subtracts 2.3 hours from the 22.7 attorney hours (reflecting 1.0 hours deducted for excessive time spent on complaint, 0.4 hours deducted for excessive time spent on reviewing the answer and affirmative defenses, 0.1 hour deducted for excessive time spent reviewing an ECF notice, and 0.8 hours deducted from time spent on litigating attorney's fees), then applies a 35% total percentage reduction to the result of 20.4 hours to reflect lack of billing judgment, block billing, and the

clerical tasks intersticed among the legal tasks in the billing statement.

Taking 13.26 hours as the number of hours for the lodestar calculation, the court multiplies this by the rate of $290.00 an hour to arrive at a lodestar fee amount of $3,845.40.

VI

Once the lodestar amount is determined, there is a strong presumption that it represents a reasonable fee. *See Del. Valley Citizens' Council*, 478 U.S. at 565. The court can adjust the lodestar upward or downward after assessing the twelve *Johnson* factors, but the party seeking the adjustment bears the burden of establishing that an adjustment is warranted. *La. Power & Light*, 50 F.3d at 329 (citing *U.S. Football League v. Nat'l Football League*, 887 F.2d 408, 413 (2d Cir. 1989)).[16] Many of these factors are "presumably fully reflected in the lodestar amount," however, such that modifications are proper only in certain "'rare' and 'exceptional' cases, supported by both 'specific evidence' on the record and detailed findings." *Del. Valley Citizens' Council*, 478 U.S. at 565 (citing *Blum v. Stenson*, 465 U.S. 886, 898-901

_____

[16]Merrick maintains that the Supreme Court has abandoned the *Johnson* factors. This contention is misplaced. Merrick cites the part of Justice Scalia's concurrence in *Blanchard v. Bergeron*, 489 U.S. 87, 99 (1989)——in which he is *critical* of the majority's approach——as though it were part of the majority opinion.

(1984)).[17]

Scott urges the court to reduce Agruss' fees based on two factors: the novelty and difficulty of the questions presented and the preclusion of other employment.  It argues that the FDCPA cases Agruss handles must not be novel or difficult because Agruss has handled approximately 1,000 FDCPA cases since 2008.  Scott also infers from the number of the cases that no one FDCPA case precludes Agruss from handling others.  This evidence is insufficient of itself to persuade the court that this case presents such a "rare" or "exceptional" set of circumstances that further reductions are necessary in addition to the ones the court has already made and that are reflected in the lodestar.  The court already accounted for the relatively rote and simple nature of this litigation by making reductions to the fees charged in creating form pleadings, reviewing the answer, and researching affirmative defenses.  And while preclusion from other work could justify a upward deviation from the usual fee, the fact that a case does not impede the attorney from taking other cases does not alone support a reduction.  Scott has failed to carry its burden of establishing that a reduction is warranted under the *Johnson* factors, and the court adopts the presumptively reasonable lodestar figure as the

_____

[17]In particular, the Court determined in *Delaware Valley Citizens' Council* that the novelty and complexity of the issues, the special skill and experience of counsel, the quality of representation, and the results obtained were presumably fully reflected in the lodestar amount.

appropriate attorney's fee amount in this case.

                        *      *      *

     For the reasons explained, the court awards Merrick the sum of
$3,845.40 in attorney's fees and $405.00 in taxable costs of court.
Merrick shall recover this award from Scott.

     **SO ORDERED.**

     May 20, 2011.


                              _____
                              SIDNEY A. FITZWATER
                              CHIEF JUDGE